American Court Reporting
toll-free (877) 320-1050

Page 1

IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

CASE NUMBER: 2:05-CV-1090-W

A.G., a minor child; D.A., a minor child; A.L., a minor child; M.K., a minor child; and M.H., a minor child,

    Plaintiff(s),

vs.

AUTAUGA COUNTY BOARD OF EDUCATION; JOSEPH BUTLER and TERRY WRIGHT,

    Defendant(s).

**CONFIDENTIAL**

DEPOSITION TESTIMONY OF:

MARIANNE G. ROSENZWEIG, Ph.D.

March 13, 2007

1:00 p.m.

COURT REPORTER:

Susan A. McLane, CSR, CLR

ORIGINAL

Page 2

S T I P U L A T I O N S

1  
2        IT IS STIPULATED AND AGREED by and
3  between the parties through their
4  respective counsel that the deposition of
5  MARIANNE G. ROSENZWEIG, Ph.D., may be taken
6  before Susan A. McLane, CSR, CLR, and
7  Notary Public for the State of Alabama at
8  Large, at the offices of ROSEN HARWOOD,
9  Tuscaloosa, Alabama, on the 13th of March,
10 2007, commencing at approximately 1:00 p.m.
11         IT IS FURTHER STIPULATED AND
12 AGREED that the signature to and the
13 reading of the deposition by the witness is
14 waived, the deposition to have the same
15 force and effect as if full compliance had
16 been had with all laws and rules of Court
17 relating to the taking of depositions.
18         IT IS FURTHER STIPULATED AND
19 AGREED that it shall not be necessary for
20 any objections to be made by counsel as to
21 any questions except as to form or leading
22 questions, and that counsel for the parties
23 may make objections and assign grounds at

Page 3

1  the time of trial, or at the time said
2  deposition is offered in evidence, or prior
3  thereto.
4           Please be advised that this is the
5  same and not retained by the Court
6  Reporter, nor filed with the Court.
7
8
9                    I N D E X
10
11
12  EXAMINATION:                      PAGE NO.
13  Ms. Hortberg                         6
14  Certificate                        233
15
16
17               INDEX OF EXHIBITS
18
19  EXHIBITS                          PAGE NO.
20  Defendant's 1                        13
21  Defendant's 2                        16
22  Defendant's 3                       138
23

American Court Reporting
toll-free (877) 320-1050

Page 4

1            A P P E A R A N C E S
2
3    FOR THE PLAINTIFF(S):
4            Michael J. Crow
5            BEASLEY, ALLEN, CROW, METHVIN,
6            PORTIS & MILES
7            218 Commerce Street
8            Montgomery, Alabama 36103
9
10
11   FOR THE DEFENDANT(S):
12            Katherine C. Hortberg
13            BOARDMAN, CARR & HUTCHESON
14            400 Boardman Drive
15            Chelsea, Alabama 35043
16
17
18   ALSO PRESENT:
19            Larry Butler
20
21
22
23

1       I, Susan A. McLane, CSR, CLR, of
2  Birmingham, Alabama, and Notary Public for
3  the State of Alabama at Large, acting as
4  Commissioner, certify that on this date,
5  pursuant to the Federal Rules of Civil
6  Procedure, and the foregoing stipulations
7  of counsel, there came before me at the
8  offices of ROSEN HARWOOD, Tuscaloosa,
9  Alabama, on the 13th day of March, 2007,
10 commencing at or about 1:00 p.m., MARIANNE
11 G. ROSENZWEIG, Ph.D., witness in the above
12 cause, for oral examination, whereupon, the
13 following proceedings were had:
14
15      MARIANNE G. ROSENZWEIG, Ph.D.,
16 having been first duly sworn, was examined
17 and testified as follows:
18
19           COURT REPORTER: Usual
20 stipulations?
21           MS. HORTBERG: That's fine.
22           MR. CROW: That's fine.
23

1  A. That I would have noted that --
2  the date, no.
3  Q. Okay. But you do have a
4  recollection of contacting every parent, at
5  least one parent of every student plaintiff
6  about the services that are available to
7  them through Child Protect?
8  A. Yes.
9  Q. Did you have any additional
10 conversations with any of the parents
11 beyond that phone call and anything
12 recorded in your reports?
13 A. Not that I can think of, no.
14 Q. Do you have plans to see any of
15 these students or their parents again?
16 A. No.
17 Q. Do you consider your evaluation
18 of each student plaintiff to be complete?
19 A. Yes.
20 Q. Have you ever been employed as
21 an educator at an elementary school level?
22 A. No.
23 Q. Have you ever been employed as

1   an educator at the intermediate school
2   level?
3           A.   No.
4           Q.   Have you ever been employed as
5   an educator at the high school level?
6           A.   No.
7           Q.   And I believe you testified
8   earlier you have been employed as an
9   adjunct professor at the university
10  level --
11          A.   Yes.
12          Q.   -- for approximately one year --
13          A.   Yes.
14          Q.   -- right before your retirement
15  from the University of Alabama.
16          A.   Yes.
17          Q.   Is that the only time you've
18  been employed as an educator at the
19  university level?
20          A.   No.  I taught a course when I
21  was in graduate school, the introductory
22  psychology course.
23          Q.   At Southern Illinois?

1   A.   No, here at the University of
2   Alabama.
3   Q.   Was that when you were obtaining
4   your Masters or your Ph.D.?
5   A.   I don't remember now. It was
6   basically kind of a seamless program and I
7   don't recall.
8   Q.   Have you ever obtained your
9   teaching certificate here in the State of
10  Alabama?
11  A.   No.
12  Q.   And you've never been an
13  administrator at any school level?
14  A.   No.
15  Q.   Elementary, intermediate, high
16  school or university?
17  A.   That's correct. Well, no, I was
18  an administrator, but not in terms of an
19  educator. At the university, I was
20  considered administration but not as a
21  professor.
22  Q.   Okay. And you've never been an
23  administrator at the elementary,

1  intermediate or high school level?
2     A.  No.
3     Q.  Have you ever been employed to
4  prepare a policy for any school district,
5  any public school district?  And I'm going
6  to refrain that to a school district that
7  is, you know, elementary, intermediate or
8  high school level.
9     A.  No.
10    Q.  Okay.  Have you ever been
11 employed to prepare a policy at the
12 university level?
13    A.  Yes.
14    Q.  When was that?
15    A.  In roughly around 1980.  And
16 then I helped -- I was on the committee
17 that wrote the university's initial sexual
18 harassment policy.  And then I served to
19 review policies and make recommendations --
20 subsequent revisions to that policy over
21 something like seventeen, eighteen years.
22    Q.  What was the name of that
23 committee?

1   Q. So you were a part of the
2 committee that prepared the initial sexual
3 harassment policy here at the University of
4 Alabama and then you were also a committee
5 member to help revise that policy over
6 seventeen, eighteen years?
7   A. Yes.
8   Q. Okay. Every year, was the
9 policy revised?
10   A. No.
11   Q. Just periodically over the
12 course of those seventeen or eighteen years
13 was the policy revised?
14   A. Correct.
15   MR. CROW: Yes? Answer out
16 loud.
17   THE WITNESS: Oh, I did. You
18 just didn't hear me.
19   MR. CROW: Oh, okay.
20   Q. (BY MS. HORTBERG) And was it
21 your testimony that the policy, initial
22 policy, was prepared in 1980?
23   A. Yes.

Page 126

1    Q.   Have you had any dealings with
2 the sexual harassment policy here at the
3 University of Alabama since your retirement
4 in 2001?
5    A.   No.
6    Q.   So is it your experience that
7 sexual harassment policies are subject to
8 change?
9    A.   They should, yes.
10   Q.   And the policy that you helped
11 draft, the initial draft in 1980, was that
12 adopted in its initial form or did you all
13 revise that over the course of the
14 committee's life?
15   A.   I don't remember that. That was
16 over twenty-five years ago. I don't
17 remember.
18   Q.   Okay. Do you remember ever
19 being a part of any committee where a draft
20 was presented of a policy and it was
21 adopted as is?
22   A.   I'm not sure at this point in
23 time.

1  investigation of that charge here at the
2  University of Alabama?
3     A.  There was no investigation.
4     Q.  What sort of training have you
5  received on how to prepare a protocol to
6  investigate sexual harassment or sexual
7  abuse claims?
8     A.  I have attended a number of
9  workshops on that issue over the years.  I
10 have also done a lot of reading in the
11 literature about those issues as well.
12    Q.  You've never received any formal
13 education or formal training for preparing
14 a protocol on investigation of sexual abuse
15 or sexual harassment, correct?
16    A.  Can you explain?  I'm not sure
17 what you -- how you're using the word
18 formal.  Because, to me, a workshop is
19 formal.
20    Q.  Attending a workshop is formal
21 training to you?
22    A.  To me it is, yes.
23    Q.  Was that part of your twenty

1   school districts, correct?
2       A.   I don't know how --
3       Q.   You don't know who or how?
4       A.   I mean, well, it could vary that
5   -- a lot of boards, as I understand, rely
6   on their local attorneys to provide them
7   with a model policy.  And that they
8   generally just adopt that.  That's my
9   understanding of how most districts go
10  about that process.
11      Q.   Are you aware how or who drafted
12  the Autauga County Board of Education's
13  sexual harassment policies?
14      A.   No.
15      Q.   Are you aware of how they were
16  adopted?
17      A.   No.  Except from my reading of
18  the board's policy manual and the policy
19  that was adopted in November of 2005, my
20  understanding is the board has to -- is the
21  only one who can make a policy, that that
22  has to be approved by the board.
23      Q.   You were not a participant in

1 the drafting or adoption of any Autauga
2 County Board of Education sexual harassment
3 policy?
4     A.   No.
5     Q.   And just as there are varied
6 ways to draft a policy, there are varied
7 ways for a person to interpret a policy,
8 correct?
9     A.   I don't know what you mean by
10 your question. I'm not following you.
11     Q.   Well, just because a policy is
12 written a certain way doesn't mean everyone
13 is going to interpret it the same way,
14 correct?
15     A.   If it's written clearly, it
16 should -- you know, going back to the
17 reliability thing. If it's written
18 clearly, everyone should have the same
19 understanding of the policy. And that
20 would, in fact, be a measure of how well
21 the policy is written for the intended
22 audience is do people understand it in the
23 same way.

Page 233

1           CERTIFICATE

2   STATE OF ALABAMA)

3   COUNTY OF SHELBY)

4

5        I hereby certify that the above and
6   foregoing deposition was taken down by me
7   in stenotype and the questions and answers
8   thereto were transcribed by means of
9   computer-aided transcription, and that the
10  foregoing represents a true and correct
11  transcript of the testimony given by said
12  witness upon said hearing.
13       I further certify that I am neither
14  of counsel, nor kin to the parties to the
15  action, nor am I in anyway interested in
16  the result of said cause named in said
17  caption.

18                    *Susan J. McLane*
19       _____
20            Susan A. McLane
21            Certificate No:  AL-CSR-486
22  My Commission expires
23  December 1, 2007