THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | | |
|---|---|---|
| A.G., a minor child, by and through her mother and next of friend, K.C.; D.A., a minor child, by and through her mother and next of friend, B.A.; A.L., a minor child, by and through her mother and next of friend, C.T.; M.K, a minor child, by and through her mother and next of friend, K.K.; and M.H., a minor child, by and through her mother and next of friend, B.H., | * * * * * * * * | |
| | * | CIV. ACT. NO.: 2:05cv1090-MEF |
| Plaintiffs, | * * * | |
| v. | * * * | |
| AUTAUGA COUNTY BOARD OF EDUCATION; JOSEPH L. BUTLER; DENE CLEVELAND and TERRY WRIGHT, | * * * * * | |
| Defendants. | * * | |

_____

| | | |
|---|---|---|
| B.H., a minor child, by and through his mother and next of friend, D.S., | * * * | |
| Plaintiffs, | * * * | |
| v. | * | CIV. ACT. NO.: 2:06cv393-SRW |
| AUTAUGA COUNTY BOARD OF EDUCATION; JOSEPH L. BUTLER; DENE CLEVELAND and TERRY WRIGHT, | * * * * * | |
| Defendants. | * * | |

**PLAINTIFFS' OPPOSITION TO AUTAUGA COUNTY BOARD OF EDUCATION'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT, MARIANNE ROSENZWEIG**

1

The Plaintiffs, acting by and through the undersigned attorneys of record, submit Plaintiffs' Opposition to Autauga County Board of Education's (hereinafter "ACBE") Motion seeking to exclude the testimony from the tendered expert witness, Marianne Rosenzweig, Ph.d (hereinafter referred to as Ms. Rosenzweig). For the reasons set forth below, the motion to exclude should be denied.

## I. FACTUAL BACKGROUND

The Court is well aware pf the factual background of this case. Therefore, the Plaintiffs will no recite all the facts of this case, but those only pertain to Defendant ACBE's motion.

The only claim left in this case is Plaintiff's Title IX Claim (20 U.S.C. §1681(a)). One of the elements of Plaintiffs claim is to prove a person with the school board with an authority to take corrective measures had actual notice; 2) the official with such notice was deliberately indifferent to the misconduct.

ACBE has filed a motion seeking to exclude the testimony of Ms. Rosenzweig by alleging her testimony does not meet the applicable legal standard for relevance and reliability announced in *Daubert* and its progeny. The objective of the *Daubert* decision "is to ensure the reliability and relevancy of expert testimony."

There is no reasonable basis for ACBE's challenge to the proposed expert testimony of Ms. Rosenzweig. As will be demonstrated, Ms. Rosenzweig has extensive training, personal experience and practical experience relating to the specific subject area of her proposed testimony, and she has either observed, studied or had personal and practical experience, together with other "specialized knowledge" she possesses, makes her proposed testimony both relevant and reliable.

## II. LAW AND ARGUMENT

A.    **Applicable Law to a Challenge of Ms. Rosenzweig.**

    1.    **What are the Requirements for the Admissibility of Expert Testimony?**

ACBE, in its motion *in limine*, is seeking to have this Court exclude expert testimony the Plaintiffs propose to offer. The general question, then, is this: What are the requirements for the admissibility of expert testimony? For seventy years, the admissibility of scientific expert testimony was governed predominantly by the "general acceptance" test set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923) (holding that opinions based on a lie detector test were inadmissible because the principles of the lie detector test had not been generally accepted by the recognized scientific community). The "general acceptance" test required that the theory or methodology relied upon by a scientific expert have gained general acceptance within its field. *Id.*. In 1974, the United States Congress enacted Federal Rule of Evidence 702, which addressed the admissibility of expert testimony.

In 1993, the United States Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), set forth the standards by which a court must analyze the admissibility of expert testimony under Rule 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education my testify thereto in the form of an opinion or otherwise.

Rule 702.

In *Daubert*, the Court held that Rule 702 was an express rejection of the *Frye*, "general acceptance" test for admissibility of expert testimony. *Id* at 588. ("The drafting history makes no mention of *Frye*, and a rigid 'general acceptance' requirement would be at odds with the 'liberal thrust of the Federal Rules and their 'general approach to relaxing the traditional barriers

to opinions testimony'"). Accordingly, the Court rejected *Frye* in favor of a more liberal, flexible approach under Rule 702.

The liberal, flexible approach adopted by the Court was that a trial court should merely ensure that the expert testimony admitted is not only relevant, but also reliable. *Id.* At 589. The Court noted that the relevance requirement is that the evidence "must assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591. Although the reliability requirement goes to the expert testimony, the Court noted that the focus of the trial court's analysis must be on "principles and methodologies, not on the conclusions that they generate". *Id.* at 595. The Court held, therefore, that the trial court's role was to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597.

Although the Court did not provide absolute guidelines as to what factors a trial court should consider when performing this analysis of a reliable foundation, Justice Blackmun made "general observations" about factors a court should consider with regard to expert scientific testimony. Justice Blackmun's "general observations" included the following four factors: (1) the testability of the theory; (2) whether the theory or technique has been subjected to peer review and publication; (3) the potential rate of error; and (4) the general acceptance of the theory or technique in the scientific community. *Id.* at 591-595. The Court emphasized that the "general observations" were not requirements, as "the inquiry envisioned by Rule 702 is . . . a flexible one." *Id.* at 594.

In 1999, the Supreme Court issued its opinion regarding the extension of a *Daubert*-type hearing to non-empirical scientific expert opinions. *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999). In *Kumho*, the Court clarified that even though the reliability requirement of Rule 702 applies to all experts, a trial court is not required to have a hearing

4

merely because the opposing party objects to the expert. *Id.* Instead, the moving party has the initial burden to "call [] sufficiently into question" the factual basis, data principles, methods, or application of methods relied on by the expert. *Id.* If no sufficient issues are raised, the trial court can "avoid unnecessary 'reliability' proceedings" and "take for granted" that the expert's opinions are reliable. *Id.* at 152. If the trial court has an initial reason to doubt the expert's reliability, it must then determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline. *Id.* at 149.

**B.     Important Principles of the Rule 702 Gatekeeping Analysis.**

**1.     A Presumption Exists in Favor of Admitting the Testimony of Ms. Rosenzweig.**

As the Supreme Court noted in *Daubert*, "[t]he Rule's basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587. The purpose of Rule 702 was to relax and liberalize the standards for admissibility of expert testimony. Upon review of Rule 702 by the Supreme Court, the Court began by stating that the adoption of the Federal Rules of Evidence had superseded the previously existing "*Frye* test," which had been spawned by *Frye v. United States*, 54 App. D.C. 46, 47, 293 F. 1013, 1014 (1923) (which held that expert opinion based upon a scientific technique is inadmissible unless the technique is "generally accepted" as reliable in the relevant scientific community). The Court then made this important observation:

> We interpret the legislatively-enacted Federal Rules of Evidence as we would any statute.... Rule 402 provides the baseline:
>
>> "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

5

> "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence." Rule 401. The Rule's basic standard of relevance thus is a liberal one.

*Daubert*, 509 U.S. at 587, 113 S.Ct. at 2793-94.

*Daubert's* recognition that Rule 401's "basic standard of relevance . . . is a liberal one" may be the most important concept from *Daubert* to consider when evaluating ACBE's *Daubert*-based challenge to the testimony of Ms. Rosenzweig.

**2.      Jurors are Still the Triers of Fact.**

Although the courts have made trial judges the "gatekeepers" of the threshold admissibility of expert testimony, it is still the jury who decides the facts of a case. The Supreme Court acknowledges in *Daubert* that the more liberal standard of Rule 702 would likely allow the jury to hear more expert testimony. *Id.* It determined, however, even if its ruling would "open the floodgate" of expert testimony, that juries would not be confused. Importantly, the Court noted:

> In this regard [Merrell Dow] seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. . . . Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment . . ..

*Id*, 509 U.S. at 596.

This language – that vigorous cross-examination and presentation of contrary evidence is the "appropriate means of attacking shaky" evidence – underscores the Court's earlier comment that the "basic standard of relevance . . . is a liberal one."

Whereas *Daubert* dealt with evidence which was clearly of a medical/scientific nature, the third case of the trilogy, *Kumho*, addressed the question of "how *Daubert* applies to the testimony of engineers and other experts who are not scientists." *Kumho*, 526 U.S. at 141, 119 S.Ct. at 1171. Thus, *Kumho* is the case of principal importance in reviewing ACBE's motion *in limine* in this case and deserves a careful review.

*Kumho* involved a products liability claim arising from the blow-out of a tire on a minivan, which caused an accident that resulted in one death and several other persons being seriously injured. Despite the fact that the tire's tread depth (11/32 of an inch when new) had been worn down to depths that ranged from 3/32 of an inch along some parts of the tire to nothing at all along others and the fact that the tire tread had at least two punctures which had been inadequately repaired, the plaintiff's expert concluded that a defect in its manufacture or design caused the blowout. *Id.*, 526 U.S. at 143, 119 S.Ct. at 1172. The district court, ruling upon a summary judgment motion brought by the defendants, examined the methodology of the plaintiff's expert in light of the reliability-related factors mentioned in *Daubert*, such as a theory's testability, whether it "has been a subject of peer review or publication," the "known or potential rate of error," and the "degree of acceptance ... within the relevant scientific community." The district court found all these factors weighed against the reliability of the expert's methods and granted the defense motion to exclude the testimony and granted the motion for summary judgment.[1] *Id.*, 526 U.S. at 145-146, 119 S.Ct. at 1173.

---

[1] The district court granted the plaintiff's motion for reconsideration. The plaintiffs argued that *Daubert* should be applied more flexibly than it had been by the district court, and the district court agreed. However, the district court still found insufficient indications of the reliability of the expert's methods and affirmed its prior order excluding the testimony and granting summary judgment. *Kumho*, 526 U.S. at 145-146, 119 S.Ct. at 1173.

The Court of Appeals reversed, holding that *Daubert* was inapplicable to a non-scientific testimony based upon skill and experienced-based observation. The Supreme Court granted certiorari because of uncertainty among the lower courts about whether, or how, *Daubert* applied to expert testimony based not upon "scientific" knowledge, but rather upon "technical" or "other specialized" knowledge. *Id.*, 526 U.S. at 146-147, 119 S.Ct. at 1173.

The Supreme Court, in an opinion written by Justice Breyer, observed:

> Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. . . . In other cases, the ***relevant reliability concerns may focus upon personal knowledge or experience***. ... [T]here are many different kinds of experts, and many different kinds of expertise. . . . *Daubert* makes clear that the factors it mentions do not constitute a "definitive checklist or test." . . . And *Daubert* adds that ***the gatekeeping inquiry must be "'tied to the facts'" of a particular "case."***... We agree . . . that "***[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony***." . . . The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. ***Too much depends upon the particular circumstances of the particular case at issue.***

*Id.*, 526 U.S. at 150, 119 S.Ct. at 1175 (emphasis added).

The Court went on to state:

> At the same time . . . some of *Daubert's* questions can help to evaluate the reliability even of experience-based testimony. In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

*Id.*, 526 U.S. at 151, 119 S.Ct. at 1176.

The Court noted:

To say this is not to deny the importance of *Daubert's* gatekeeping requirement. ***The objective of that requirement is to ensure the reliability and relevancy of expert testimony****.* It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Id.*, 526 U.S. at 152, 119 S.Ct. at 1176 (emphasis added).

The Court observed that the proposed expert testimony in *Kumho* "depended upon acceptance . . . that his visual and tactile inspection could determine that the tire before him had not been abused despite some evidence of the presence of the very signs for which he looked (and two punctures)." *Id.*, 526 U.S. at 154, 119 S.Ct. at 1177. The problem with the proposed expert in *Kumho*, as noted by the Court, was that his "method" was "sufficiently precise to tell with any certainty from the tread wear whether a tire had traveled less than 10,000 or more than 50,000 miles" and that his "mode of analysis" was highly subjective. The proposed expert admitted that "he had inspected the tire itself for the first time the morning of his first deposition, and then only for a few hours" and his initial conclusions had been based on photographs. *Id.*, 526 U.S. at 154-155, 119 S.Ct. at 1177. Furthermore, the proposed expert called his own methodology into question, saying "he would ideally 'look at a lot of [similar] tires' to know the grooving's significance, and that he had not looked at many tires similar to the one at issue." *Id.*, 526 U.S. at 155-156, 119 S.Ct. at 1178.

Even though the Supreme Court found it was appropriate for the district court to have excluded the proposed expert's testimony, the Court re-iterated:

> *that the relevant reliability inquiry "should be 'flexible,'" that its "'overarching subject [should be] ... validity' and reliability*," and that "*Daubert* was intended neither to be exhaustive nor to apply in every case." App. to Pet. for Cert. 4c (quoting *Daubert,* 509 U.S., at 594-595, 113 S.Ct. 2786).

*Id.*, 526 U.S. at 158, 119 S.Ct. at 1179 (emphasis added).

The circuit courts have focused upon *Daubert's* self-pronounced 'flexibility.'  For example, the Seventh Circuit has stated:

> In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. . . . An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. While "extensive academic and practical expertise" in an area is certainly sufficient to qualify a potential witness as an expert, . . . "*Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience*," *Walker*, 208 F.3d at 591. *See Kumho*, 526 U.S. at 156, 119 S.Ct. 1167 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Thus, *a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area*.

*Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (emphasis added).

The Seventh Circuit added  ". . . as the Supreme Court has repeatedly emphasized, the Rule 702 test is a flexible one, and no single factor is either required in the analysis or dispositive as to its outcome." *Id.*, 215 F.3d at 719.

The Seventh Circuit amplified this approach in *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 54 Fed. R. Evid. Serv. 1492 (7th Cir. 2000), stating:

> The notion that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, . . . requires particular credentials for an expert witness is radically unsound. The Federal Rules of Evidence, which *Daubert* interprets rather than overrides, do not require that expert witnesses be academics or PhDs, or that their testimony be "scientific" (natural scientific or social scientific) in character. [Citations omitted.] *Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness*. [Citations omitted.] The principle of *Daubert* is merely that if an expert witness is to offer an opinion based on science, it must be real science, not junk science.

*Id.*, 223 F.3d at 591 (emphasis added).

The Fifth Circuit follows the rationale stated by the Seventh Circuit:

> The *Daubert* analysis should not supplant trial on the merits. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "[V]igorous

10

> cross-examination, presentation of contrary evidence, and careful instruction on
> the burden of proof are the traditional and appropriate means of attacking shaky
> but admissible evidence." *Id.* (quoting *Daubert* 509 U.S. at 596, 113 S.Ct. 2786).

*Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

**C.**    **Ms. Rosenzweig is Qualified for Admission under Rule 702, Daubert and Kumho.**

Remembering that *Daubert* declared that Rule 702's "basic standard of relevance . . . is a

liberal one" and that *Kumho* cautioned trial judges to focus "upon the particular circumstances of

the particular case at issue," and also remembering *Daubert's* admonition that "[v]igorous

cross-examination, presentation of contrary evidence, and careful instruction on the burden of

proof are the traditional and appropriate means of attacking shaky but admissible evidence,"

ACBE's objections and challenge to the proposed testimony of Ms. Rosenzweig fall far short of

requiring exclusion.

Ms. Rosenzweig has extensive practical experience as well personal training, personal

experience and well versed in the literature of sexual harassment policy and procedure in an

academic setting.  Ms. Rosenzweig meets the requirements of Rule 702, *Daubert* and *Kumho*.

Ms. Rosenzweig has attained "specialized knowledge" through experience and through studies of

literature and other relevant materials relating to sexual harassment policies and procedures in an

academic setting.  Ms. Rosenzweig has well-reasoned opinions, based upon personal knowledge

and other documentation that will be extremely helpful to the trier-of-fact.

The Supreme Court has held that the trial court has the ultimate discretion to determine

what factors it will consider, based on the type of expert at issues. *Kumho*, 526 U.S. at 152.  The

Court has also emphasized that the trial court's analysis should focus not on the conclusions

reached by the expert, but rather, on the methodology employed by the expert. *Daubert*, 509 U.S.

at 595.  ACBE has broken its challenge into two categories:

1.    Ms. Rosenzweig's opinions do not meet FRE 702 requirements.

2.    Ms. Rosenzweig's opinions do not meet FRE 402, because the Court determined the board's polices are not at issue.

ACBE's objections will be discussed in order.

## I.    Mrs. Rosenzweig's Opinions Do Not Meet Rule 702 Tests

Rule 702 reads as follows:

> If the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact and issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliable to the facts of the case.

Defendant ACBE attacks Ms. Rosenzweig's qualifications in not that her opinions will aid or assist the trier of fact.

Ms. Rosenzweig has the following formal education:

1.    A B.A. from Southern Illinois University in 1973 with a major in Psychology.

2.    A M.A. from University of Alabama in 1975 in Clinical Psychology, and

3.    A Ph.D. from University of Alabama in 1978 in Clinical Psychology.

She has the following work experience:

1.    She has been a Forensic Psychologist part-time from 1980 to 2001 and full-time from 2001 to the present time.

2.    She has been a part-time Clinical Psychologist from 1986 to 1988 and in 2003 to the present.

3.    She was an Adjunct Assistant Professor in the College of Human Environmental Sciences in 2001 and 2002.

12

4.     She was the Assistant to the Dean and Adjunct Professor in the College of Human and Environmental Sciences from 2000 to 2001.

5.     She was a Staff Psychologist at Russell Student Health Center in 1998 to 2000.

6.     She was the Director of Counseling and Psychological Services and Assistant Director of Russell Student Health Center from 1992 to 1998.

7.     She was a Senior Clinical Psychologist at Russell Student Health Center from 1978 to 1992.

8.     She was an Adjunct Assistant Professor for the Department of Psychology at the University of Alabama from 1984 to 1990 and 1995 to 2000 and from 2005 to the present.

9.     She was the Director of the Rape Relief Center in Tuscaloosa, Alabama from 1974 to 1976 and 1977 to 1978.

She has authored or co-authored the following papers or publications:

1.     The Effect of Sexual Harassment Workshops on Knowledge and Attitude About Sexual Harassment and Attitudes Towards Women. Workshop presented at the Sixth International Conference of Sexual Assault and Harassment on Campus. Long Beach, CA.

2.     Sexual Harassment; Awareness and Prevention. Served on committee within the University of Alabama Division of Student Affairs which developed a training module for University staff to problems of sexual harassment. (1991-1992).

3.     Sexual Harassment on University Campuses. Presentation to the Alabama Association of Women's Deans, Administrators and Counselors. (1980)

She has attended the following workshops:

1.     A Supervisor's Guide to Preventing Sexual Harassment, Tanner & Guin Law Firm in 1999.

13

She has extensive knowledge of the literature including, but not limited to the following:

**Books**

1.   Dealing with sexual harassment claims in Alabama; Desk Reference Manual, Chapter on Prevention of Claims (1994) Published by the National Education Network.

2.   Sexual harassment in higher education; Concepts and Issues. (1992) The National Education Association.

3.   Sexual harassment:  A report of sexual harassment of students. (1990) National Advisory Counsel on Women's Educational Programs.

4.   Academic and workplace sexual harassment: A resource manual.  (1991) State University of New York Press.

5.   Establishing school policies on sexual harassment.  (1994) Phi Delta Kappa Educational Foundation.

6.   Sexual harassment: Theory, Research and Treatment.  (1997)

7.   Sexual exploitation in schools: How to spot it and stop it.  (2004)

8.   Innocent denied: A guide to preventing sexual misconduct by teachers and coaches.  (2006)

9.   Academic and workplace sexual harassment: A handbook of culture, social science, management in prospective.  (2003)

10.   Sexual harassment on campus: A guide for administrators, faculty and students. (1997)

**Articles**

1.   The incident and dimensions of sexual harassment and academia in the workplace.  (1998) Journal of Vocational Behavior.

14

2.    <u>Academic harassment: Sex in the denial of in a scholarly guard</u>.   (1998) Psychology of Women's Quarterly.

3.    <u>An organizational development approach to preventing sexual harassment</u>. (1989) CUPA Journal.

4.    <u>Sexual misconduct by school employees</u>.  Eric Digest (1999) Digest No. 134.

5.    <u>Preventing student sexual harassment</u>.  Eric Digest (2000) Digest No. 160.

6.    <u>Sexual harassment of adolescence perpetrated by teachers and by peers: And exploitation of the dynamics of power, culture, and gender in secondary schools.</u> (2003) Sex Roles.

7.    <u>Clinical and forensic aspects of sexual harassment in school age children</u>. (2002) Principals and Practice of Child and Adolescent Forensic Psychiatry.

8.    <u>Sexual harassment guide: Harassment of students by school employees</u>, (1996) Office of Civil Rights, Federal Registry.

Further, Ms. Rosenzweig sat on a committee at the University of Alabama, which prepared sexual harassment policies for the University and served on that committee which reviewed the policy and made subsequent revisions and recommendations for the next seventeen or eighteen years.  (See Rosenzweig deposition, pg. 123, lines 10-23)

Ms. Rosenzweig further has consulted with two private non-educational entities to develop sexual harassment policies.  (See Rosenzweig deposition, pg. 127, lines 8-21)

Further, Ms. Rosenzweig has testified on at least two prior occasions with respect to educational sexual harassment policy and procedure.  (See Rosenzweig deposition pg. 174)

Based upon the standard set forth in *Daubert/Kumho* it is quite clear that Mrs. Rosenzweig can aid and assist the trier of fact in the area of sexual harassment policy and

15

procedure with an academic setting.  Ms. Rosenzweig's opinions will be based upon facts and special knowledge and applying her training, experience and special knowledge to the facts of the case would be reliable.

**II.     Ms. Rosenzweig's Opinions Do Not Meet Rule 402 Tests.**

The Autauga County Board of Education argues that Mrs. Rosenzweig's opinions of sexual harassment policy and procedure and academic setting have no relevancy in the case based on this Court's *Memorandum Opinion and Order* of May 11, 2007 (pg. 28).

However, the portion of the Court's opinion, the Defendant Autauga County Board of Education is referring to concerns of the Plaintiffs 1983 Claims and not the Title IX Claims before the Court.

Plaintiffs argue that Defendant ACBE's Sexual Harassment Policy is a relevant issue to Larry Butler's deliberate indifference to the Plaintiffs prior to October 29, 2004.  (See the Court's Memorandum Opinion/Order p. 5, fn. no. 2)

WHEREFORE, the Plaintiffs request the Court to DENY the *Defendants Third Motion in Limine* because the opinions are relevant and would aid the trier of fact in this case.

/s/Michael J. Crow
MICHAEL J. CROW (CRO039)
Attorney for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, Alabama 36104
(334) 269-2343

16

                                   /s/Robert D. Drummond
                                  ROBERT D. DRUMMOND (DRU004)

OF COUNSEL:

Attorney at Law
323 De LaMare
Fairhope, AL 36532
(251) 990-6249

17

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on the ___ day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:


Terry Wright, AIS 247561
Limestone Correctional Facility, Dorm 16
28779 Nick Davis Road
Harvest, Alabama 35749-7009

Katherine Hortberg
Mark Boardman
Boardman, Carr, Reed, Hutcheson
Post Office Box 382886
Chelsea, Alabama 35238-2886

Robert D. Drummond
Attorney at Law
323 De LaMare
Fairhope, AL 36532

                      __/s/Michael J. Crow_____
                      OF COUNSEL

18